We would call the next case please. Case number 12-13293, People v. Jason Leavitt. Sure, that's fine. Good morning, your honor. My name is Tom Needham, N-E-E-D-H-A-M, and myself and my colleague Aaron Needham represent the family of Jason Leavitt. Great, thank you. Your honors, as set forth in the people's briefs, there are different ways that we can consider whether the trial court erred in dismissing the indictment. But at the end of the day, regardless of the analysis used, there must be a showing of actual prejudice. Counsel, before you proceed, could you give us what this court should consider as the standard of review? The standard of review is that the abuse of discretion for Judge Ford's decision. Judge Ford abused his discretion in reversing the Judge Beeple's decision to seal the indictment. So it's not a de novo review? It is a de novo review of Judge Ford's decision, but not of Judge Beeple's decision, considering that Judge Beeple, whether or not he abused his discretion. Thank you. Again, regardless of the analysis that we use here, there must be a showing of actual prejudice. But the defendant here has done nothing to demonstrate that he was actually prejudiced. His general claim that memory spade is not enough, the fact that he refinanced his home is not enough. And he doesn't ever claim that his ability to defend against the indictment was affected in any way. Okay, you're jumping ahead a little bit as far as I'm concerned, and I'm sorry to interrupt, but how do you get to the issue of actual prejudice? Don't we have to go back a little bit and see if the statute of limitations is not or not met? Yes. The point of the way that I presented this is that no matter which point we get to, which analysis we take, and I'll discuss each of them, at the end of the day, there still must be a showing of prejudice. That is the bottom line issue on either approach? On any approach that's presented here. All right. Thank you. And that's the reason why the case should not have been dismissed overall, is that there's no showing of prejudice. And that's just one error that the trial court made here. As Your Honor indicated, the other error, the initial error, was that he said that the statute of limitations was implicated in this case, and it wasn't. The Illinois statutes are clear. There's no interplay between the commencement of a prosecution and whether or not an indictment is sealed. Illinois law clearly sets forth that a prosecution must commence within three years of the commission of the offense, and that a prosecution commences with the return of the indictment. Illinois law does not draw a distinction between indictments that are sealed or not. Well, and I just, because the statute of limitation uses the word prosecution should commence. And so I guess we have to interpret what prosecution means. Is that correct? Well, the other statute indicates that a prosecution commences with the return of the indictment. Or an imprimatur. Or an imprimatur. I'm sorry. In this case, it's the return of the indictment. So we're told in our statutes what the prosecution, when it commences, and when it needs to commence. So does that end our analysis here? The state's position is yes. We're done. Yes. It was dismissed on statute of limitations grounds. In this case, the indictment was returned prior to the expiration of the statute of limitations. It never should have been dismissed. And you get to that conclusion by reading the two statutes together? Correct. And the common law interpreting, again, what it means. Yes. It's very clear. The Illinois law throughout many, many years has said that a prosecution commences with the return of an information or with the return of an indictment. But if I look just to the common law, this issue about an indictment being sealed has never really played into an interpretation of when a prosecution commences. Because it shouldn't. Because there's no interplay between the two. Do I have to go back to the purpose of a statute of limitations, though? I mean, isn't it to make sure that the evidence is still there and that the defendant can prepare a defense? Do I have to go back to that purpose and reinterpret the statute of limitations? No, absolutely not. Because that would be if there was ambiguity in the statutes. Then let's go back to the legislative history and all of those things. The statutes are very clear here. There's no ambiguity. It tells you when a prosecution must commence, what commences it. We're done. We're done. So there's no statute of limitation issue? Not at all. That's the state's primary position. So then we move on to, in your analysis. In our analysis. Well, before we move on, though, you indicate that the other authority that we should look at is the common law. The federal. Well, our state's primary position is that looking at the common law is not necessary. Our primary position is that these statutes are clear. For interpreting the statute of limitations. For interpreting the statute of limitations. The statutes are clear. We don't need to look any further. We're not contradicting ourselves when we say don't look at federal law, then look at federal law. We're saying primarily the statutes are clear. We don't need to look at the federal law. We don't need to look at the outside aids in interpreting those statutes. If, however, this court determines that those statutes aren't clear, and we do need to look to outside aids in interpreting the statutes, then we go to the federal cases. And you're relying on Thompson. Yes. But the key here is to apply them properly. And Thompson, we believe, is the better approach. And what Judge Ford did is completely misapply those federal cases, either one of them, Thompson or the other approach. But first taking a look at Thompson, Judge Ford's decision that the indictment was improperly sealed was wrong. All of these federal cases say that an indictment can be sealed for any legitimate prosecutorial purpose. And that investigating a related crime is, in fact, a legitimate purpose. Here, the state was investigating that broader conspiracy within the Park Ridge Police Department, which was directly related to the aggravated battery of this indictment. So the primary motivation for sealing was absolutely proper. Judge Ford didn't like what happened after that. So he used that information post-sealing to dismiss the indictment. But isn't there some concern in the federal law that it's not just the original sealing that comes into play, but whether it's unreasonable to keep it sealed, so that at some point that also comes into play? Not yet, but yes, it does. Initially, we have to look to the propriety of the sealing. And in that case, it is. The original sealing is proper. And under the Thompson rationale, we're done. We don't get any further than that. And that's what the state is proposing. Our suggestion is to follow Thompson. Even if, under Thompson, the sealing is improper, then under Thompson, you look at harmless error. We would review for that. And the defendant's ability to defend against the indictment was not impaired in any way, especially given he was defending against the civil case, the same allegation in civil court. Comparing it to Thompson itself, in that case, the sealing violation was not harmless because the defendant destroyed relevant documents that were related to his defense after the statute of limitations had expired, but before the indictment was unsealed. His defense was affected. That's not the case here. Okay. So let me just know the roadmap that you want us to follow. It's, one, the state met the statute of limitation because on the eve of the limitations period, you filed an indictment, or an indictment was filed. Within the limitations period, yes. End of story. End of story. But if we feel that we need to look at somehow that the sealing of the indictment comes into play, you want us to look at Thompson. Correct. But we only look at Thompson because? Well, we believe Thompson is the better approach. But we look at Thompson because there is some issue about a sealed indictment meeting the statute of limitations. No. Thompson says there's still no interplay between the statute of limitations and a sealed indictment. What Thompson says is if the indictment's returned within the statute of limitations, sealed or not, it cannot be dismissed on statute of limitations grounds. Okay. But Thompson says then you look at it in terms of whether the indictment was properly sealed. So the first step with Thompson is? So do we always look at Thompson under your arguments? Or do you not want us to look at Thompson? We don't think it's necessary to. But if there's an, it would be, in this case, the judge dismissed it on statute of limitations grounds. That's wrong. If the defendant challenges the propriety of the sealing, then it would be done under Thompson. But that's separate from any statute of limitations issue. Okay. And they have challenged. They have challenged. But you want us to analyze that part under Thompson. Correct. I'm sorry. All right. So Judge Ford's ruling in the record indicated that the indictment had already run the expiration of the statute of limitations. He dismissed it on statute of limitations grounds, which we believe was wholly in error.  It never should have been dismissed on those grounds. And your argument is that when it was sealed, it told the statute of limitations. Correct. So when does the window open again? For the running of the statute. Does it ever? No. Under, what our statutes say is if it's returned within the statute of limitations period, it's not going to be dismissed on statute of limitations grounds. The other option, what we're looking at here under Thompson, is look at whether or not the indictment was sealed properly. If it was, we move on. If the defendant wants to make a prejudice argument down the road, they do that in these cases. But it is not a statute of limitations question. Under Thompson, they're going to see, number one, was the indictment properly sealed? If it was, it's not dismissed. If it wasn't, was the error harmless? And then you can look at the delay in unsealing. You can look at whether or not the defendant was actually prejudiced. That's where you get to those prongs of Thompson. But in our position, under Thompson, the indictment was properly sealed. What Judge Ford did in reversing Judge Beeble's decision was wrong. Judge Ford was supposed to consider, he was supposed to give Judge Beeble's decision great deference. He was supposed to consider the evidence leading up to the indictment, leading up to the sealing of the indictment, and determining whether Judge Beeble abused his discretion. He didn't do that. But he did review the record, didn't he? Didn't he review the record in terms of what Judge Beeble considered when he sealed the indictment? And then some. He went beyond that. Our position is that Judge Ford should have looked at what occurred up to what was presented to Judge Beeble, period, and whether Judge Beeble abused his discretion on what was presented to him. He didn't do that. Instead, Judge Ford said, you know what, I'm saying that investigating a related claim is not a legitimate purpose. So I'm dismissing the indictment. He relied on two cases for that. He got into Ann Rogers. But there's a whole line of other authority that says exactly the opposite, that investigating a related claim is a legitimate purpose. And that's Mitchell, Wright, Southland, and Edwards. And you can't say that Judge Beeble abused his discretion because he followed that line of cases. What that shows is that Judge Ford didn't give Judge Beeble's decision the proper deference that he should have. To defer means to presume that that decision by Judge Beeble was correct. He didn't do that. It's like a motion to reduce bond where the reviewing judge is going to look to the original decision and see if anything has changed. He also mentioned due process. I mean, there's other thoughts in his decision that may not. That's kind of down the road. But ultimately, again, even if you look at due process, there has to be showing of actual evidence. So I'll let you get to that in the course of events. But I want to just point out again that Judge Ford didn't give that proper deference to Judge Beeble's decision. Just because Judge Beeble followed one line of authority doesn't mean that that was an abuse of discretion. It's a very established line of authority. There's no doubt here that the ceiling was proper. The state didn't misinform Judge Beeble of anything. They were investigating the broader conspiracy within the police department, which was directly tied to this case. So that ceiling, that initial... But isn't there a question here that there really was no secrecy, that actually the police department did know that there was an investigation proceeding? That's post-ceiling. That information doesn't pertain to the original ceiling of the indictment. And under Thompson, if the original ceiling is proper, we're done. We don't get any further. Even if, even if under Thompson, the original ceiling is not proper, then you look for harmless error. And here, the defendant's ability to defend against the indictment was not impaired. There's no harmless error. That's under Thompson, and that would be the approach that we would suggest this Court to take. Even if... Wouldn't the issue about the civil matter be considered prejudiced here to the defendant, given the fact that he was in the process of trying to settle a civil lawsuit in federal court, and the fact that there was some indication that there was an indictment filed against him? Wouldn't that be considered prejudiced in terms of him being able to proceed? In terms of being able to defend against this indictment, I don't see how the two relate. Perhaps I'm not understanding your question, but he had the opportunity to present that information at the hearing to Judge Ford in terms of demonstrating his prejudice. He never did. What he said was that memories fade, I had to refinance my home. He never said he was impaired in his ability to defend. Even if you look at the majority approach instead of Thompson, then you look at the delay in unsealing and whether or not the defendant was prejudiced by that. Again, he can't win under that approach either. Under this approach, the trial court has to make a specific finding that the defendant was substantially, irreparably, and actually prejudiced before it can dismiss the indictment. Judge Ford never made that finding. Instead, he ruled that even if the indictment was properly sealed, the unsealing was unduly delayed. It's true, an indictment can't remain sealed forever. It needs to be unsealed as soon as the legitimate need for the sealing has passed. That was done here. Once all of the key witnesses had been interviewed, once all of the evidence had been reviewed, all of the materials that were obtained from the Park Ridge Police Department, the state moved to unseal. But even if that indictment remained sealed too long, the defendant still has to make a showing of actual prejudice before it can dismiss the indictment. That's not done here. At best, Judge Ford said the defendant suffered from the delay, but he never said how the defendant actually suffered. The defendant, again, never makes a claim of actual prejudice. There's absolutely no showing here that the defendant's ability to defend against the charges were affected in any way. Isn't there some indication in the federal law, and I'm sorry if it's Thompson or the other line of cases, that it's not always evident right at the get-go what the prejudice might be? You know, as you get through the preparation for trial, there may be indications of prejudice that some witness disappeared or other evidence has been destroyed during this period. And there was one case. I believe it was under the majority approach, not the Thompson approach, where the defense made a motion to dismiss after the indictment was unsealed, and the court said, I can't make that decision now because I don't know if you were prejudiced. They renewed the motion at the end of trial and found that the defendant hadn't been prejudiced in any way. So going back to the issue of the deference, are you asking us to consider in your argument Southland, that the Southland is the case that's applicable with regards to the issue of deference? Yes. It is Southland that says that you need to give that Judge Beeble's decision. Exceptional deference or whatever to the magistrate. Great deference. Great deference. Okay. Yes, we would ask, and there's a line of cases that follow that because that's the decision that the state relied on in moving forward. Again, just to summarize the state's position here, the indictment never should have been dismissed under any analysis that you could take. Again, we believe it was returned before the statute of limitations expired, and the sealing of an indictment does not impact the statute of limitations. Any problem with the propriety of the sealing or the length of time that it remains sealed is harmless because the defendant's ability to defend against the indictment was not impaired. That's Thompson. But even if the sealing impacts the statute of limitations and you look at it under the majority approach, number one, the first factor, the indictment was properly sealed. Number two, the second factor, the defendant cannot establish actual, substantial, and irreparable prejudice. And because of that, we ask that you reverse the trial court's finding and remand this matter for trial. And one further question. With regards to the sealing of the indictment, when your office was in front of Judge Beeble, Judge Beeble was just informed that there was an allegation of a conspiracy, correct? Correct. And that was all the information that Judge Beeble had at the time? Did you want to investigate an alleged conspiracy that might have been taking place within the police department? That was related to the cover-up of the indictment in this case. Okay. But he was provided with the other reason why Judge Beeble's decision should get great deference in this case is because the states did provide reasons to Judge Beeble for the sealing, for the request to seal. Judge Beeble made a decision to seal based on that, and all of that is recorded of record. And in other cases where the magistrate in the federal cases didn't receive great deference is because the prosecutors, the government, didn't provide any reasons for the sealing, and they felt that how can we give the magistrate great discretion or great deference when we don't know his basis for the reasons? We have all of that here. The state provided their reasons. Judge Beeble based his ruling on those findings. It gets great deference. That's not what Judge Ford did, and we ask that you reverse that decision. Okay. Thank you. Thanks, Counsel. Thank you. May it please the Senator McCoy. Good morning. Good morning. If I could first address Justice Reyes, what you asked right out of the box to my colleague, Ms. Ball. In the first line of the argument section of the state's brief, they make the statement that Judge Ford's decision dismissing the indictment was manifestly erroneous, and that is the correct standard of review for this court. Now, we know we're dealing ultimately with a legal issue and something about which there is no reported decision in the state of Illinois. We all know that, so I know that there's some leeway that's given here. But in this case, the trial court conducted an evidentiary hearing where he heard from not just my client, Jason Levitt, but from the prosecutor who was leading this investigation, and the judge made factual findings at that hearing. He heard the testimony. He then took it under advisement, and it wasn't until several months later that he made his findings. It wasn't just a legal decision that was decided on the pleadings. He stated that the length of the delay was significant. He talked about that. He stated that there was no effort, according to the sworn testimony, to expedite or, as Judge Ford stated, to police the overtime period in this case. Are those findings a fact? Yes, I submit they were. For example, at one point during the argument, the assistant state attorney handling the case in the trial court tried to argue to Judge Ford that the reason for the ceiling was correct or that it was proper because witnesses had to be protected or the secrecy of the investigation had to be protected. And the phrase that he used was that he thought that that was a complete canard. And using that phrase, that's a fairly strong language, and it's based on the testimony that the prosecution was presenting from the prosecutor who was leading the investigation. He found also that at least from January 28, 2010, when there was a search of the Park Ridge police facility until the unsealing and the indictment much later in November of 2010, any further delay from that period of time was uncalled for. I disagree that the judge made a ruling just based on the statute of limitations here. He did talk about the fundamental. He did an alternative. Right. He did an alternative. Okay. So I think that's clear in the record. And by the way, at the trial court, the prosecution did not take the position that no evidence was necessary about what happened from the time of the sealing until the time of the unsealing. I called, in support of my motion, my client. The prosecution then presented the testimony of the person from the Special Prosecutions Bureau that was handling this, and throughout that direct examination went to great lengths to have him explain, in an attempt to satisfy Judge Ford, that the sealing was necessary and that it was appropriate and that they were moving with the speed that was appropriate for this kind of case. He was the one who was explaining, well, what were you doing in March of 2010? What happened later in the summer of 2010? What happened in November? Is that more to the delay in unsealing or the propriety of the original seal? Well, it goes to both. I guess the point I was trying to make is that in this court, the prosecution is taking the position that there was no need for any review of all this evidence of what happened. In fact, it's stated in the reply brief, the prosecution states here, that it's not appropriate to consider what happened after the indictment is sealed when determining whether it was properly sealed. That's on page 8 of the prosecution's reply brief. But that was not the position that they took in the trial court. They were the ones who presented this testimony about the things that were happening from October 26, 2009 until the indictment was unsealed almost 13 months later. So tell us what your analysis is. Is there a statute of limitations issue? Yes. Right, there is. So here's what I think, what I submit is a correct ruling for this court. First of all, Judge Ford's decision, obviously our position, it should be affirmed. In this case, Judge Ford looked at the evidence and considered the case law and he decided the approach should be why was the delay necessary? What use was made of the delay? And how long, relatively, was the delay? And I think that's what we're doing here. And I submit that the case that's actually closest to this was the Giganti case in New York, which I cited both in the circuit court and I cited here. It's a case out of New York from 2006. And in that case, because our federal courts, and I know there's a split, I understand it, but half the federal courts at least are saying that we're going to conduct a post-unsealing review if the prosecutor's sealing decision is challenged, and we're going to look at all the evidence. And if we determine that the sealing was improper, then the statute of limitations has expired. I know there's cases out there. Counsel, I have one question, though. You say that this case is close to Giganti, but in Giganti they had multiple type of indictments, I believe, that were presented between multiple magistrates, and some of them were being removed and some of them were being sought by different magistrates. So isn't this different in the sense that we're only dealing with one indictment that was sealed for a period of time factually? We are, but I submit that the facts that are different are more supportive of our argument than the prosecution's argument. They appear in front of the presiding judge of the criminal division, and the day before the last day of the statute of limitations, they ask the judge to seal the indictment. He grants that request based on some statements that Judge Ford later finds, was that Judge Beeble was laboring under misconceptions created by information brought to him by the state attorney's office. That's a factual finding, I submit. Then for over 12 months, no effort is made to go back and renew the application or update Judge Beeble about what's going on. No effort, and it's in the record here, too. I represented Jason Levitt in the circuit court, and I represented him before the indictment was obtained, and the state attorney's office knew that. No effort to involve the defense in that, and I raised that issue in my brief. I don't want to get sidetracked here, but for 13 months, Judge Beeble is under the impression that some investigation into a cover-up is going on about the actual charges that he brought against Jason Levitt. But Judge Ford heard the testimony from the prosecutor in this case that there was a, and this was elicited by the state attorney who was conducting the hearing, that there was a commander there named Keller who allegedly, this was part of the reason that was offered for the delay, he was getting parking tickets for his friends dismissed, and so that became part of the investigation. And there was other questions that were attempted to show that you're looking at things that other officers were doing or his supervisor. There was an inference that an attorney by the name of Kajawa did something inappropriate when he sat down and tried to draft a defense to the civil litigation. So none of that was explained to Judge Beeble. So I think that the delay here, just the fact that it went over a year, the fact that there was no effort to renew it or to go back to Judge Beeble and explain the status of it, which commonly happens in the federal system when you read these cases. So what I'm suggesting here is that what the prosecution is asking for here is something that is extraordinary. As litigants and as lawyers that live in these courtrooms and as justices and formerly judges who decide these cases, we all know what it means when there's a statute of limitations in place, whether the case be civil or criminal. The clock is ticking. So if you're someone who has the burden of proof and is thinking about bringing a case, whether it be civil or criminal, you're under some pressure to act because the law has a date out there beyond which you cannot act. And if you're on the other side of the beat in one of these cases, you have a right to look at that calendar. And when the time passes, you have a right, as Jason Levitt did in this case, when the statute of limitations expires, you have a right to exhale and to know that the state charges it. In that case in the 19th century I cited, talk about the charge going to oblivion. Where's the prejudice to your client, though? The state argues that there was no prejudice. Okay. What I submit is that if the approach that I'm suggesting the court should take here is adopted, if a finding is made that the indictment was improperly sealed, the statute of limitations is blown, and the defendant is not called upon to explain. So isn't there always the second element of showing prejudice? Some of the cases require the defendant to show some prejudice. Some of the cases, however, Justice Radsford, and I know Thompson is relied upon by the state here, but in Thompson at the district court level, at the trial court level there, the prosecutor took the position that the indictment was properly sealed and so there was no statute of limitations issue. In the Second Circuit, I'm sorry, the Tenth Circuit, they took the position that it was improperly sealed. So here's what the court in Thompson said. Well, they went on to do a harmless error, and that's the state's burden. Right, exactly. Yeah, but you're asking us to disregard? I'm saying that if you agree that an improper sealing, if an indictment was improperly sealed, and that's found later, as Judge Ford did here, then the statute of limitations has expired. The state, by improperly sealing the indictment, has forfeited their right to bring that charge. That's, I think, what the gist or the essence of the ante is. And that's where you want us to end the inquiry. But even if you wanted to look at the prejudice analysis, because some of the cases do look at the passage of time, the propriety for the sealing of the indictment, what did you do at that time? Was there a Seventh Circuit case? Was there a Seventh Circuit case? There is not. The Seventh Circuit in, I think, 2009 or 2010 addressed a related issue, and they noted, I think Ms. Ball said this in one of her briefs, the Seventh Circuit did what they sometimes do. They just said, okay, we notice that there's this dispute out there, but we're not going to jump into the fight. We're not going to jump into the fight. They're going to wait for the First District to tell the court. There you go. So I guess, can I just answer the prejudice, because it's the most glaring question I knew I was going to anticipate here this morning. I've already made the point that it should not be up to Jason Levitt or someone who's been through a situation where the statute of limitations expired. The owner should be on the prosecution to explain why they needed that extra time. So you want us to adopt that part of time. Yes, exactly. So I do want to point out that the passage of time, there is hardships inherent in the defense of these cases that come with the passage of time. That's why we have statutes of limitations. And so here, the indictment wasn't unsealed until four years after the incident. I do want to point out that in the record here, the Assistant State's Attorney, according to his testimony, and he made no bones about it, he was accusing colleagues of Jason Levitt of perjury. He was accusing an attorney who represented Jason Levitt and other people in the Park Ridge Police Department on the civil case of some type of misconduct that was fairly obvious. I think the prosecutor at the hearing called it this ducks-in-a-row meeting, as though Mr. Kajawa was getting everyone together and saying, okay, here's the story we're going to concoct, or here's the defense we're going to manufacture. That is obviously going to have a chilling effect on witnesses that Jason Levitt might need to defend in this case. Because it's going to get out. There's no doubt it's going to get out. And Judge Ford, I think, made an apt finding here. There was no secret about this. Because Jason Levitt and other police officers, a month before the statute of limitations, were sitting in Magistrate Nolan's chambers at a settlement conference. Excuse me, Counselor, so your argument is the prejudice to your client was that he wasn't going to be able to put together a defense? I think that's a fair inference from the evidence in this record here. When you have the prosecutor who's leading the investigation is accusing the people who he doesn't believe of committing perjury. And they're obviously bringing the case. I think the only possible way to read the prosecutor's testimony from this hearing is to say, well, we had this one sergeant who we believed. He was real cooperative. And then these other people came in here and said something different. That was blatant perjury. In fact, he said he wrote a memo to his supervisor asking that those people be indicted for perjury. But it's not related to the delay, is it? No, but it is related to the delay. Because remember what happened here. The indictment was sealed against Jason Levitt on October 26, 2009. And then the same witnesses who had already spoken to the grand jury in 2009 were getting summoned down there again. In fact, Mr. Mahoney, at the conclusion of his investigation or during his testimony, he talks about the investigation waxing and waning after the statute of limitations has, I submit, expired. But he says the high point was when two witnesses who we had previously talked about, Garcia and Smith were their names, police officers, decided to come in and I think it's, I mean, we're doing a little bit of tea leaf reading here, but I think it seems pretty clear that what happened here, when the statute of limitations was about to expire, the prosecution was not comfortable with the strength of the case that they had against Jason Levitt. And so they spent the next 12-plus months making that case stronger. And then towards the end of that time, two witnesses said something different to Mr. Mahoney than they said in 2009, and he termed that as the high point or the high watermark, I think was the phrase he used. And as the court in Giganti stated, that cannot possibly be a reason for extending the statute of limitations, that we need more time to build a case against you. And that's exactly what happened here. I've used up a lot of time. I just want to point out something here, and I think my Westlaw search, I'm sure, I hope it was as thorough as Ms. Ball. There are, in our combined briefs, 23 federal opinions out there. So if you look at these, you can almost do a matrix. Okay, I did a matrix. And you just look at the length of the time. Almost no cases. There are a handful of cases where the delay goes beyond what was done in Jason Levitt's case. But you mentioned the Southland case, Justice Reyes, a few moments ago. That was a 39-day delay in the ceiling. A couple of them were five days, ten days. Very few of them are over a year. In fact, there's a couple of decisions out there I cite where they talk about the delay being over a year as presumptively prejudicial or real problematic. And that seems to me a fair place to land in this case, over a year. I have one question with regards to the deference issue. If I understand your argument correctly, what you're indicating is that it's not that Judge Ford did not give deference to Judge Bebo's decision, but he looked at the information that Judge Bebo relied on in terms of sealing the indictment. Is that correct? Right. And he had more information at his disposal, and you have that here. And so to say that, as the State does in their reply brief, well, we shouldn't consider anything that happened post-ceiling. I mean, this Court I know here is in a criminal case, and Justice Lampkin will know this. There's a motion to suppress. Evidence is heard. The motion is denied. And then a trial is held, and then someone is convicted, and the appeal comes here. And this Court routinely takes a position that in deciding the Fourth or Fifth Amendment issue or whatever is at dispute in the motion to suppress, we're going to consider the whole record. And I don't see how we can. We have this evidence here, and we have a case of first impression. It's something that's very important. I mean, it's rare, the sealing of the indictment, thankfully. But this is a very important case, and we shouldn't be closing our eyes to evidence that we have in the record about what really happened here. When you mention this delay and the matrix and the various time periods, where are you putting that? Are you putting that in a due process, a speedy trial argument, or are you putting it right back to the statute of limitations issue? I'm not quite sure. Our position is that if a court finds that the reason for the sealing was improper, then you've missed your chance to prosecute this person because the statute of limitations has expired on you. I think that's what some of the federal courts do, and I think that's the fair and the best approach. But when you're looking at whether or not you're going to do it for a statute of limitations reason or whether or not you're going to look at the overall fairness. Then you're still looking at these delays. From what I can tell, the case that is out there that affirms a delay that's a lot longer than the one in this case, there's a case called Bracey, and it's an 18-month delay. It's a 1995 case. It involves a multiple defendant, multi-state narcotics investigation where witnesses had to be gotten into the witness protection program and so forth. None of them, not even close. Thank you. On behalf of Jason Levitt, I want to thank you all for your time today. Thank you. Thank you. A couple minutes on rebuttal. Stay focused here. What's happening is defense counsel and I believe Judge Ford wants to put blending all these issues together and putting everything that happened post-closing into the mix before it should be. And the state's position is don't close your eyes to what happened post-closing, but open them and consider that evidence when it's appropriate. And the evidence post-closing is not, not post-sealing, is not to be considered in determining whether Judge Beeble's decision to seal the indictment was an abuse of discretion. That doesn't factor in yet. The only things that should be considered when Judge Ford considered whether Judge Beeble abused his discretion is what information was provided to Judge Beeble at that time and whether Judge Beeble abused his discretion in sealing the indictment based on that information. But according to counsel, it's a chicken and egg argument because Judge Ford looks at Judge Beeble's decision and according to counsel's argument, it's that Judge Beeble did not have the information that Judge Ford had with regards to sealing the indictment. Okay. The information, what's happening is that there is an approach that needs to be taken. It needs to go in order. And what counsel and Judge Ford did is push it all together and make one decision. None of the cases say that. None of the cases, as counsel suggests, say that if you've gone beyond the statute of limitations and the indictment is sealed or not, you're done. None of them say that. Even if you take the majority approach, if the indictment, under the majority approach, if the indictment is sealed and unsealed past the statute of limitations, step one is, was that indictment properly sealed? And that decision gets great deference. That wasn't done here. And you can't miss that step. You can't say it's beyond the statute of limitations. Goodbye. You have to say, was that indictment properly sealed, giving great deference to Judge Beeble's decision to seal, looking at the information Judge Beeble had at that time? That is what Judge Ford didn't do. He didn't like what happened post-closing, and neither does counsel. But that doesn't play into, was the original decision to seal proper? Even if you take the majority approach, we get past that. Because there's no doubt here, the original decision to seal was proper. With the information that was presented, there was no misinformation. The state didn't lie about anything. There are cases here in our briefs that show that the government provided misinformation to the court for that decision to seal, and they said, that's it, you don't get it. That was not a legitimate reason to seal. Then the case is dismissed. We don't have that here. We were looking at the broader conspiracy investigation directly tied to this indictment. That's a legitimate reason to seal. If you want to move on then to step two, you can't forget that one. That's prejudice to the defendant. Then look at whatever happens post-sealing to determine whether or not the defendant was prejudiced. Including the delay. Yes, that's when the delay factors in. That's not what happened here. Judge Ford didn't like what happened here, and he used it to dismiss it for this reason up here, saying that the people's decision to indict was an abuse of discretion. He doesn't get to do that. That's what's manifestly erroneous here, Judge Ford taking all of this and trying to apply it where it doesn't belong. And that can't happen with this court either. We need to identify what information goes at what step of the game. It is laid out in our brief how it should go. Again, the state's position is that the statute of limitations wasn't implicated. But if it was, take this approach step-by-step and the information, the evidence, where it belongs. Counsel talks about things that the investigation post-sealing moved too slowly, that the trial court said it waxed and it waned. Again, that's post-sealing. It does not play into whether or not the indictment was properly sealed. So taking your argument, if we determine that the indictment was not properly sealed, end of story? No. No. Under our approach, assuming we're past statute of limitations, if you say we need to get past statute of limitations, under our approach is Thompson. Okay. And if you were to say under Thompson that the indictment was not properly sealed, then you move to harmless. I feel like I should have a flip. Yeah. I apologize for that. I think it's clear in our position that the indictment was properly sealed. I also think it's very clear that when we move to the next step, if we need to, there's no resulting prejudice. Defense counsel talks about hardships. What are they? He doesn't put forth any. He says that he had to refinance his house and that memories sometimes fade. All of the cases across the board, any analysis, do process it. Anything. Anything. That's not sufficient to establish substantial irreparable actual prejudice. But what about his argument that he said he can't mount a defense based on the fact that you're out there investigating people and that he's going to lose witnesses? I think it's far-fetched since he was already mounting a defense for the same allegations to defend in civil court. So I don't think that that's going to hold to be true. And to also be clear with this prejudice analysis, defense counsel wants you to have this bright line rule at 12 months. And I think that that's a reference to the Barker analysis. First of all, there is a competing, there's a line of cases that says that an indictment can remain sealed longer than 12 months. So long as it is unsealed as soon as that need for the delay has passed. And that was done here. But that presumption for prejudice that I think he's referencing with the Barker analysis, it's a completely separate question from the prejudice that's required for statute of limitations. You can't just point to that presumption of prejudice under the first Barker factor and be done with the statute of limitations argument. That presumption of prejudice does not negate the validity of the original ceiling in this case. And the presumption of prejudice doesn't mean that the defendant was actually prejudiced, that his defense was actually impaired. Even under the Barker analysis, all that presumption does is trigger the rest of the Barker analysis. And that fourth factor that you get to, the defendant has to establish prejudice. And are there cases where there is a protracted delay that negates the defendant's need to establish prejudice under that speedy trial analysis? There's no U.S. Supreme Court case that says that. There's no bright line rule. There's no specific length of time. And the Illinois cases that say that, the delays were much longer. It was 29 months in Veltcher and 31 months in Yeager. That's more than twice the length of delay that we have here. So you can't take that presumption and say there's prejudice here. All of the cases across the board have to consider, do consider, prejudice. And that deference to Judge Beeble's decision, it is his decision that gets that deference, not the findings, the factual findings that Judge Ford made. He wasn't supposed to make them at that time. What he was supposed to do was just limit it to what Judge Beeble had decided. And that's a function, a unique function of the system and the question that Judge Beeble was asked to make at that time. But their argument is that at the time when the request was made to seal the indictment, Judge Beeble wasn't provided the necessary information. That's their argument. And regardless of what that information is, their argument is that the state did not provide Judge Beeble with sufficient evidence, I mean not evidence, information to seal the indictment. Well, I'm not sure what information they would have wanted them to present at that time because anything else that they've suggested is post-sealing. They didn't have any of that information at that time. What they had at the time was what they presented to Judge Beeble, which was we have sufficient evidence. First of all, there was sufficient evidence that ASA Mahoney testified. We have sufficient evidence for the aggravated battery charge, but we need more time for the more extensive investigation into the Park Ridge Police Department. There's no doubt it was an extensive investigation. The FBI was brought in. They were still investigating at the time this hearing was held. There's no evidence to support that the reason we sought to seal the indictment was to target the defendant and to find more evidence in this case. There's no evidence anywhere in the record to support that argument, and ASA Mahoney specifically testified the reason they sought to seal the indictment was to have the time to complete that greater, broader, more substantial conspiracy within the Park Ridge Police Department. That was a huge investigation, and again, we know it was huge. It was still ongoing when this hearing was held, and we're not asking you to do anything monumental here. We're asking you to apply the law, and we're asking you first, with the statute of limitations, to apply that law as it's clearly written in the statutes. Here, the prosecution was commenced when the indictment was returned, period. That's what the law says. The bottom line here is that Judge Ford and defendant, they don't like what happened. They didn't like what happened post-sealing, so they are trying to use that to say that the indictment should be dismissed. But Judge Ford never got to the last piece, and you cannot ignore the prejudice prong. No court anywhere across the board has analyzed this issue without considering prejudice, and no trier of fact in this case could have concluded that prejudice existed here, especially where the defendant was defending against the same allegations in civil court. Again, we ask that you reverse the trial court's decision and remand for trial. Thank you, counsel. Thank you. We will take it under advisement.